## Fidelity & Columbia Trust Company, Executor and Trustee under the will of Effie Jackson Russell v. McCabe.

(Decided April 25, 1916.)

## Appeal from Jefferson Circuit Court (Chancery Branch, First Division).

1. Limitation of Actions—Trusts—Repudiation of by Trustee.—From the time a trustee openly repudiates a trust, with knowledge of the cestui que trust, the statute of limitations begins to run.

2. Limitation of Actions—Trusts.—By acknowledgment, or conduct necessarily implying acknowledgment, of a claim adverse to the

terms of a will creating a trust, as a result of which the adverse claimant fails to enforce said claim, the trustee may stop the running of the statute of limitations.

GIBSON & CRAWFORD for appellant.

HUMPHREY, MIDDLETON & HUMPHREY for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

Mrs. Sallie McCabe, the appellee, Mrs. Effie Jackson Russell, appellant's testate, and Mrs. Maude M. Cook, who were sisters, owned in equal shares all of the seventy-five thousand ($75,000.00) dollars capital stock of the Anchorage Planting Company, a Louisiana corporation, which owned and operated a large island in the Mississippi River upon which were valuable sand and gravel deposits.

In 1899 Mrs. McCabe sold or assigned as collateral security for a debt twenty-four of the twenty-five shares of said stock owned by her of the par value of twenty-four thousand ($24,000.00) dollars to August Keller.

In 1901 or 1902 August Keller assigned his interest in said stock to his brother Herman Keller, who a short time thereafter, in 1902, transferred his interest to Mrs. Effie Jackson Russell, who procured said company to issue to her in her own name a new certificate of stock, for the entire twenty-five shares owned by Mrs. McCabe, and to endorse upon the stub of the company's stock book the following: "This stock was sold by August Keller to his brother, Herman Keller, and was sold by Herman Keller to Mrs. Effie Jackson Russell."

Mrs. Russell left a will by the second clause of which she made the following disposition of said stock:

"Item 2. I will, devise and bequeath unto the Fidelity Trust Company, of Louisville, Kentucky, on the trusts hereinafter named, twenty-five shares of capital stock of the Anchorage Planting Company, bought by me of August Keller, and formerly owned by my sister, Mrs. Sallie McCabe. I paid for said stock the sum of $3,500.00 and I now will the said stock to the said Fidelity Trust Company, in trust for my sister, Sallie McCabe, who is to receive the same after my estate is reimbursed in the full sum of $3,500.00 together with eight per cent. per annum interest thereon from the first day of March, 1901, until the same is repaid to my estate. After such repayment said Fidelity Trust Company shall pay to my said sister for and during her natural life, all of the

net income and dividends of said stock, and after her death, the same shall go to her children or issue, the issue of any deceased child to take the share the parent would take, if living, but I charge the said stock with a lien of said sum of $3,500.00 and interest.''

From the time said testatrix came into possession of said stock until her death, she received the dividends therefrom and made to her sister Mrs. McCabe an allowance of $100.00 per month; and, after the death of said testatrix, said allowance was continued by appellant by consent of the residuary legatee and the children of Mrs. McCabe. A written contract in reference thereto having been made in 1912 is in evidence. In 1914 appellee brought this suit to recover possession of said twenty-four shares of stock in the Anchorage Planting Company, alleging that she was the owner and entitled to possession thereof. The lower court sustained this contention and entered a judgment directing appellant to surrender possession of said stock to the appellee, from which judgment this appeal is prosecuted.

Appellant defended upon three grounds: (1) That Mrs. Russell bought the stock outright and had the right to dispose of it by her will. (2) That however she may have held it in the first instance, she and appellant had held and claimed it as her own with notice to Mrs. McCabe for more than five years prior to the institution of this suit, and that Mrs. McCabe's claim is barred by limitation. (3) That even though Mrs. Russell did not own the stock at the time of her death, as Mrs. McCabe has received and accepted benefits under said will, she is now estopped to deny disposition made of said stock by the will.

Upon the first question involved the testimony is not clear as to what title Mrs. Russell acquired in this stock at the time she obtained possession of same from Herman Keller, nor do we consider of controlling effect the fact that she procured the issuance to herself of a new certificate for said stock and had the endorsement made upon the stub of the stock book which we have quoted; but the fact that she collected the dividends upon the stock and took no evidence of indebtedness from her sister, Mrs. McCabe, for the amount she had paid for the stock, in view of her subsequent disposition thereof inclines us to believe that Mrs. Russell took and held absolute title with the intention not to profit

thereby, but with the determination to hold and dispose of same for the benefit of her sister and children upon such terms as she saw fit to dictate. We must confess, however, that the testimony is not entirely in accord with that conclusion, and that some of it seems rather to support the contention of appellee; however, in view of our conclusion upon the next proposition presented, it is not necessary to a decision of this case to decide what title Mrs. Russell acquired when she came into possession of this stock, or how she held it prior to the execution of her will.

2. It seems to us that there is no reasonable doubt as to the intention of the testatrix to assert title in herself and dispose of this property as her own by her will in the clause set out above. It would be hard to conceive how language could more positively indicate absolute ownership upon the part of the testatrix and no ownership whatever in Mrs. McCabe. Her statements in reference to the stock are, "I will, devise and bequeath" the stock "bought by me" and "formerly owned by my sister Mrs. Sallie McCabe." "I paid for said stock the sum of $3,500.00 and I now will the said stock," and that she did not recognize any ownership in her sister Sallie McCabe is further made certain by the fact that she gave to her sister no interest whatever in the stock even after the payment of the $3,500.00 charged against it, except the income therefrom during her lifetime with remainder to her children. Every line and almost every word of that clause is a declaration of absolute ownership in Mrs. Russell, and a denial of any title or right thereto in Mrs. McCabe except such as Mrs. Russell desired to give. The fact that the gift is charged with a lien for $3,500.00 in favor of the residuary legatee does not change the character of the title asserted by the testatrix. Page on Wills, section 752.

The title that Mrs. Russell acquired from Herman Keller in this stock as we have stated is doubtful, but there can be no doubt whatever about the title she asserted therein by the execution of her will. The will was published and probated September 6, 1906, eight years before the filing of this action, from which time Mrs. McCabe is charged with notice of the adverse nature of the title claimed by Mrs. Russell, and of the adverse holding of appellant as executor and trustee under the will, and from that date the statutes of limi-

tations began to run against her.   Section 2515 of the Kentucky Statutes; Jolly v. Miller, 124 Ky. 100; Yeager v. Bank of Kentucky, 127 Ky. 751.

Appellee contends that even though the statute of limitation began running against Mrs. McCabe when the will was published, appellant by its transactions with Mrs. McCabe recognized her ownership and thereby stopped the running of the statute.   Citing Northcut's Admr. v. Wilkinson, 12 B. Monroe 408, and Hamilton v. Wright, 87 S. W. 1093.

In the Northcut case it was held that where a note was not barred by the statute at the time of the death of the obligor, a promise of payment upon the part of the administrator was sufficient to relieve the case from the statutory bar.

In the Hamilton case it was held that if the bar of the statute had not occurred at the time of the decedent's death, the personal representative may stop the running of the limitation either by part payment or by promise to pay or by such acknowledgment of the debt as will imply a promise to pay.

It would therefore appear upon the principle announced in these two cases, which is supported by authority and seems sound in reason, that a personal representative or trustee may stop the running of the statute of limitation, by such action upon his part as will prevent the person against whom the statute is pleaded from proceeding to establish his right before the expiration of the statutory limit, but unquestionably the burden of proving such acts by convincing evidence is upon the party asserting them.   It therefore becomes necessary for us to examine the evidence relied upon by appellee to ascertain whether or not it is sufficient to establish a recognition upon the part of the appellant of her claim to ownership of the stock.

The evidence relied upon by appellee consists: (1) of a statement of Mrs. McCabe's indebtedness to the estate of Mrs. Russell, prepared a short time after the death of Mrs. Russell, by a Mr. Macrae, an expert accountant employed by appellant, in which the stock is treated as belonging to Mrs. McCabe and held by Mrs. Russell as collateral security; (2) in statements sent by appellant to appellee upon at least two occasions of the amount of interest then due upon the $3,500.00 with which Mrs. McCabe is charged in the will of Mrs. Rus-

sell, and (3) the contract entered into in 1912 by appellant, appellee and the children of appellee.

The Macrae letter is in part as follows:

"Louisville, Dec. 21, 1906.

"John Stites, Esq., Chairman, Etc.,
        Fidelity Trust Co.

"Dear Sir:—I have examined, with care, the books of accounts of the Anchorage Planting Co., Ltd., of Louisiana, and have made out from them, statements, showing the amounts which each of the three stockholders and real, beneficial owners of the company and property have received from it. These statements are filed herewith. They cover the entire period from 1893 to 1906, Nov. 30. They are numbered 1, 2, 3 respectively. * * *

"Yours truly,
    " .W. S. Macrae."

P. S.—"The stock of Mrs. McCabe in the company has been treated throughout as her own property, only pledged, not absolutely sold, to Keller or Mrs. Russell."

From which it will be seen that this letter, with accompanying statements, is a report by Mr. Macrae to his employer, the appellant; that same is a report of the condition of the affairs of the Anchorage Planting Company as shown by its books, and that the postscript to Mr. Macrae's letter is simply his statement to appellant of the fact that on the books of the Anchorage Planting Co., and in his report, Mrs. McCabe's title to the stock in controversy was recognized. This, at the most, is a statement not that the appellant recognized Mrs. McCabe's ownership, but that the books of the Anchorage Planting Co. did so. This certainly is not to be considered a binding representation of the attitude of appellant such as could stop the running of the statute of limitation, even if the testimony had shown that Mrs. McCabe ever knew of the contents of this Macrae statement, which does not appear from the testimony; so it will be seen there is nothing in this statement that could have had the effect of lulling her into a sense of security or could have prevented her from enforcing her claim.

The next evidence relied upon by appellee is the following statements furnished or mailed to Mrs. McCabe on or about July 15, 1912:

"There will be due and payable to the office of the Fidelity Trust Co., Louisville, Ky., by Mrs. Sallie S.

McCabe, Baton Rouge, La., on July 15, 1912, loan of $3,500.00; interest $140.00; total $140.00. Payable in Louisville, New York or Chicago funds. Checks on Louisville banks must be certified after 11:30 A. M. Please bring this notice with you.''

''There will be due and payable at the office FIDELITY TRUST Co., Louisville, Ky., by Mrs. Sallie S. McCabe, Baton Rouge, La., on July 15, 1912, loan of $4,263.18; interest $127.90, total.

''Payable in Louisville, New York or Chicago funds. Checks on Louisville banks must be certified after 11:30 A. M. Please bring this notice with you.''

We are unable to see how these statements can in any way indicate the position of the trust company with reference to this stock. They are simply statements of the condition of Mrs. McCabe's accounts with the company and are equally consistent with the contention of either appellant or appellee. There is certainly nothing in them sufficient to obstruct the operation of the statute.

The last of the three items of evidence relied upon by appellee to avoid the statutory bar is a written contract entered into in 1912 by the appellee, her children and appellant. How appellee can contend that this contract in any way sustains her contention we cannot understand, for not only does it not sustain her contention, but, upon the other hand, it absolutely and conclusively refutes it. If Mrs. McCabe owned or even claimed to own at that time this stock, and if that claim was recognized by appellant, there would have been no reason at all why Mrs. McCabe's children should have been a party to that contract, because it is only under the terms of the will that they could have acquired or claimed any interest whatsoever in said stock. By the execution of this contract both Mrs. McCabe and appellant recognized the title of Mrs. McCabe's children to an interest in said stock which is consonant with the provisions of the will, but entirely inconsistent with and repugnant to appellee's claim in this suit.

The above is all of the evidence presented by the record that is claimed by appellee to show a recognition by appellant of absolute title in her, and, in our judgment, not only does it fail to uphold her contention, but, upon the other hand, is convincing that the trust company held the title adversely to her claim here, in which

she not only acquiesced, but openly consented by overt act in the execution of said contract.

This being an action to recover possession of personal property and more than five years having elapsed from the time the statutes of limitations began to run and the institution of this action, its prosecution is barred by section 2515 of the statutes.

In view of our conclusion upon this question, it becomes unnecessary to consider the other question presented by the record.

Wherefore the judgment of the chancellor is reversed for proceedings consistent with this opinion.